IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KRISTA VIGIL,

      Plaintiff,

v.                                                         No. CV 20-632 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Krista Vigil's *Motion to Reverse and/or Remand* (the "Motion"), (Doc. 24), filed February 26, 2021; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and/or Remand* (the "Response"), (Doc. 26), filed April 27, 2021; and Ms. Vigil's *Reply in Support of Motion to Reverse and/or Remand* (the "Reply"), (Doc. 27), filed May 10, 2021.

Ms. Vigil applied for disability insurance benefits on May 2, 2017, alleging disability beginning July 21, 2015. (Administrative Record "AR" 39). In her application, Ms. Vigil claimed she was limited in her ability to work due to acute and chronic fibromyalgia, neuro-pseudotumor cerebri, acute and chronic depression, acute and chronic anxiety, post traumatic right knee, facet hypotrophy in neck/spine, acute and chronic fatigue, total knee replacement, high blood pressure and heartburn. (AR 118). Ms. Vigil's application was denied initially on January 11, 2018, and upon reconsideration on April 17, 2018. (AR 116, 143). Ms. Vigil requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 26, 2019, before ALJ

Jennifer M. Fellabaum. (AR 30-45).

At the hearing, Ms. Vigil appeared with impartial Vocational Expert ("VE") Thomas A. Greiner but without legal counsel. (AR 30). ALJ Fellabaum issued her decision on June 19, 2019, finding Ms. Vigil not disabled at any time between her alleged disability onset date through the date of the decision. (AR 45). Ms. Vigil then requested review of ALJ Fellabaum's decision before the Appeals Council, which was denied on May 21, 2020. (AR 1). Ms. Vigil now challenges ALJ Fellabaum's June 19, 2019 decision denying her claim for disability insurance benefits. *See* (Doc. 24).

In her Motion, Ms. Vigil argues ALJ Fellabaum erred in three respects: (1) she failed to incorporate the state agency psychological consultants' assessed limitations with supervisors without explanation, (2) she failed to properly consider Dr. Murgula's medical opinions, and (3) she failed to consider Dr. Crotwell's opinion that Ms. Vigil's "psychological status is likely connected with and exacerbates her experience of physical health problems." (Doc. 24 at 23-25). Ms. Vigil also argues the Court should grant remand so that the Social Security Administration can consider the opinion of treating source Jennifer Trujillo, PA-C, which was submitted at the Appeals Council level. *Id.* at 25-26.

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Fellabaum erred in her failure to incorporate or explain her rejection of Ms. Vigil's limitations in interacting with supervisors, the Court finds Ms. Vigil's Motion is well-taken and shall be **GRANTED**, and this case shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

### I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An

ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994)). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing (1)

4

she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work."
20 C.F.R. § 404.1520(a)(4)(i–iv); *see also Grogan*, 399 at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

In her application, Ms. Vigil claimed she was limited in her ability to work due to acute and chronic fibromyalgia, neuro-pseudotumor cerebri, acute and chronic depression, acute and chronic anxiety, post traumatic right knee, facet hypotrophy in neck/spine, acute and chronic fatigue, total knee replacement, high blood pressure and heartburn. (AR 118). At step one, ALJ Fellabaum determined Ms. Vigil had not engaged in substantial gainful activity since July 21, 2015, the alleged disability onset date. (AR 33). At step two, ALJ Fellabaum found Ms. Vigil had the severe impairments of right knee osteoarthritis with ACL repair, left knee degenerative joint disease (beginning November 2017), degenerative disc disease, scoliosis, obesity, depression, anxiety, fibromyalgia, plantar fasciitis, benign intracranial hypertension, migraines, and somatic symptom disorder. (AR 33).

5

At step three, ALJ Fellabaum determined Ms. Vigil's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (AR 33). ALJ Fellabaum then found Ms. Vigil had the RFC to perform "sedentary work." (AR 36). In addition, ALJ Fellabaum found Ms. Vigil was restricted to occasionally stooping, crouching, kneeling, crawling, and climbing ramps and stairs. (AR 36). She also found Ms. Vigil was restricted to never climbing ladders, ropes or scaffolds, being exposed to unprotected heights or hazardous machinery, or having concentrated exposure to environmental irritants. (AR 36). Further, ALJ Fellabaum found Ms. Vigil was limited to occasionally using right foot controls, and beginning in November 2017, limited to occasionally using foot controls bilaterally. (AR 36). She found Ms. Vigil can frequently finger and handle bilaterally. (AR 36). Finally, with regard to Ms. Vigil's mental RFC, ALG Fellabaum found that Ms. Vigil can perform unskilled or semi-skilled work up to specific vocational preparation ("SVP") level 4, she cannot perform fast-paced production work, and she is limited to occasional interaction with the general public. (AR 36).

In formulating Ms. Vigil's RFC, ALJ Fellabaum stated she considered her symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 36). ALJ Fellabaum stated she also considered opinion evidence, consistent with the requirements of 20 C.F.R. § 404.1520c, which applies to claims filed after March 27, 2017.[1] (AR 36). She

---

[1] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with*

6

concluded that while Ms. Vigil's impairments could be expected to cause some of her alleged symptoms, the intensity, persistence, and limiting effects Ms. Vigil described were not entirely consistent with the evidence in the record. (AR 38).

In evaluating the opinion evidence, ALJ Fellabaum applied 20 C.F.R. § 404.1520c, stating "we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s)." (AR 42). ALJ Fellabaum found the opinions of the state agency psychological consultants Mark McGaughey, PhD, and Edith King, PhD, to be "persuasive," as their opinions were "consistent with the medical evidence of record." (AR 42). ALJ Fellabaum found the opinions of state agency medical consultants Craig Billinghurst, MD, and Matheen Khan, MD, to be "mostly persuasive," as their opinions were "mostly consistent with the medical evidence of record at the time of their assessments." (AR 42). ALJ Fellabaum found that the October 25, 2016 functional capacity evaluation from a physical therapist does not constitute opinion evidence under the law "because a physical therapist is not a medical source." (AR 43).

At step four, ALJ Fellabaum found Ms. Vigil incapable of performing her past relevant work as a teacher assistant, school secretary, or mailroom supervisor. (AR 43). ALJ Fellabaum proceeded to step five, finding Ms. Vigil to be a "younger individual" who has at least a high school education, and can communicate in English. (AR 43). ALJ Fellabaum found, given VE Greiner's testimony and Ms. Vigil's age, education, work experience, and assessed RFC, that Ms. Vigil could perform other work as a cutter and

---

20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Ms. Vigil filed her claim on May 2, 2017, the new regulations apply to this matter.

7

paster, a document preparer, or a table worker. (AR 44). After finding Ms. Vigil able to perform other work existing in significant numbers in the national economy, ALJ Fellabaum concluded she was "not disabled" as defined by 20 C.F.R. § 404.1520(g). (AR 45).

**IV.     Analysis**

In her Motion, Ms. Vigil presents four arguments. *See* (Doc. 24). First, she argues ALJ Fellabaum failed to incorporate her moderate limitations with supervisors, as described by state agency consultants Dr. McGaughey and Dr. King, without explanation. *Id.* at 23. Second, she contends ALJ Fellabaum failed to properly consider Dr. Murgula's opinions. *Id.* at 24. Third, Ms. Vigil argues ALJ Fellabaum failed to consider Dr. Crotwell's opinion that Ms. Vigil's "psychological status is likely connected with and exacerbates her experience of physical health problems." *Id.* Fourth and finally, she contends the Court should grant remand so that the Administration can consider the opinion of Ms. Trujillo. *Id.* at 25. For these reasons, Ms. Vigil requests that the Court reverse the Commissioner's decision and remand the matter for a new administrative hearing. *Id.* at 24.

In response, the Commissioner maintains that ALJ Fellabaum was not required to either incorporate the limitations with supervisors described by the state agency consultants or explain her decision to not incorporate those limitations. (Doc. 26 at 6). Second, the Commissioner admits that the ALJ erred in misclassifying Dr. Murgula as "not a medical source," but argues that any error is harmless as ALJ Fellabaum's RFC assessment is consistent with Dr. Murgula's assessment of Ms. Vigil's physical limitations. *Id.* at 8-9. Third, the Commissioner contends ALJ Fellabaum adequately

8

"discussed the link between [Ms. Vigil's] physical and mental symptoms," and that any error would be harmless as Ms. Vigil failed to show "she had greater physical limitations that spring from mental impairments than those already included in the ALJ's RFC finding." *Id.* at 11-12. Finally, the Commissioner maintains that the opinion of treating source Ms. Trujillo, which was submitted directly to the Appeals Council after Ms. Vigil's hearing before ALJ Fellabaum, does not require remand because Ms. Trujillo's opinion is unsupported by and inconsistent with the record as a whole. *Id.* at 12-14. As such, the Commissioner contends Ms. Vigil's claim for disability was properly denied at the administrative level. *Id.* at 14.

*A. ALJ Fellabaum's Discussion of Prior Administrative Findings*

Ms. Vigil first argues ALJ Fellabaum failed to incorporate limitations with supervisors, a limitation described by state agency consultants Dr. McGaughey and Dr. King, without explanation. (Doc. 24 at 23). Specifically, she contends that despite being persuaded by Dr. McGaughey and Dr. King's opinions, ALJ Fellabaum failed to either incorporate their assessment of Ms. Vigil's limitations in interacting with supervisors into her RFC, or to explain why she did not include these limitations in the RFC. *Id.* She argues that this is harmful error, as the ability to accept instructions and respond appropriately to criticism is critical to the performance of unskilled work under 20 CFR § 404.1545(c).

In response, the Commissioner contends ALJ Fellabaum was not required to either adopt or defer to the prior administrative medical findings of the state agency psychological reviewers. (Doc. 26 at 6). The Commissioner argues, rather, that ALJ Fellabaum was only required to *consider* them and articulate how persuasive she found

9

them, and that ALJ Fellabaum adequately did so here. *Id.* at 7. The Commissioner contends that by stating that she found the state agency psychologists' findings persuasive based on their specialization and experience, and their consistency with and support from the record, ALJ Fellabaum adequately considered the prior administrative medical findings. *Id.* The Commissioner argues that even though the ALJ found the state agency psychologists' prior administrative medical findings persuasive, she was not obligated to defer to them. *Id.* The Commissioner further contends that ALJ Fellabaum adequately explained why she excluded certain mental work-related limitations from the RFC, when she explained "the medical records show mostly normal findings on psychiatric and mental status examinations with limited mental health treatment. . . . The evidence of record as a whole supports no greater mental limitations." *Id.* at 8.

Under the prior rules, medical opinions were weighed based on the medical source's relationship to the claimant. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2) (according "more weight" to the opinions of an examining source than a non-examining source and "controlling weight" to a treating source's well-supported opinions that are "not inconsistent with the other substantial evidence" of record). The current rules, however, place no special weight on opinions offered by a treating source or otherwise. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)"). "Instead, medical opinions and [prior administrative medical] findings are evaluated for their persuasiveness according to a uniform set of considerations." *Purdy v. Berryhill*, 887 F.3d 7, 13 n.8 (1st Cir. 2018)

10

(citing 20 C.F.R. § 416.920(c)). Under the new rules, medical opinions from state agency consultants are considered "prior administrative medical findings." 20 C.F.R. §§ 404.1513a, 404.1520c. The rules for weighing prior administrative medical findings, however, do not differ from those for weighing medical opinions. *See* 20 C.F.R. §§ 404.1520c(a-c), 416.920c(a-c).

While the considerations "are similar under the prior and current rules, *compare* 20 C.F.R. §§ 404.1520c(c) and 416.920c(c), *with* 20 C.F.R. §§ 404.1527(c) and 416.920(c), the prioritization of the factors[,] and requirements for articulating how an adjudicator consider[s] each factor[,] differ." *Silva v. Saul*, 1:19-cv-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020). The five factors to consider include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Previously, an ALJ gave special consideration to the medical source's relationship to the claimant—the third factor. *See, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Silva*, 2020 WL 4220862, at *4. The current regulations, however, provide that the factors of supportability and consistency are "[t]he most important factors" in considering "the persuasiveness of medical opinions and prior administrative findings." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In determining how persuasive opinions and findings are, an ALJ must "explain how [she] considered the supportability and consistency factors . . . but [is] not required to[] explain how [she] considered the [remaining] factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

As before, however, ALJs must still "consider all relevant evidence in the case record in reaching their disability determination." *Silva*, 2020 WL 4220862, at *4 (citing

20 C.F.R. §§ 404.1520b, 416.920b). "Although an ALJ is not required to discuss every piece of evidence, '[t]he record must demonstrate that the ALJ considered all of the evidence[.]' " *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). "The ALJ must discuss not only the evidence supporting [her] decision but also 'the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects.'" *Id.* (quoting *Clifton*, 79 F.3d at 1010).

### 1. The Prior Administrative Findings

Dr. McGaughey reviewed Ms. Vigil's records on October 26, 2017 and opined that she has mild limitations in understanding, remembering, or applying information; and adapting or managing oneself. (AR 106). He stated that Ms. Vigil has moderate limitations in interacting with others; and concentrating, persisting, or maintaining pace. (AR 106). Dr. McGaughey opined that Ms. Vigil suffers from moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors. (AR 113, 141). He also indicated, however, elsewhere in his report, that Ms. Vigil could understand, remember, and carry out simple instructions, attend and concentrate to complete a routine workday, exercise reasonable judgment, and "interact appropriately with coworkers, supervisors, and the public on an incidental basis." (AR 107). Finally, Dr. McGaughey opined that Ms. Vigil could respond appropriately to changes in a routine work setting. (AR 107). Dr. King reviewed Ms. Vigil's records on April 19, 2018, and reached the same conclusions. (AR 133).

### 2. ALJ Fellabaum's Mental RFC Assessment

In determining Ms. Vigil's mental RFC, ALJ Fellabaum found the opinions of the state agency psychological consultants Dr. McGaughey and Dr. King to be "persuasive,"

12

as their opinions were "consistent with the medical evidence of record." (AR 42). She noted that "Dr. McGaughey and Dr. King are medical sources with specialization in psychology, substantial expertise and experience in making such assessments." (AR 42). She then found that Ms. Vigil could perform semi-skilled work, which she determined is "consistent with the consultants' opinions that the claimant is only 'moderately limited' for understanding, remembering, and carrying out detailed instructions." (AR 42).

With regard to Ms. Vigil's mental RFC, ALJ Fellabaum found only that she can perform unskilled or semi-skilled work, she cannot perform fast-paced production work, and she is limited to occasional interaction with the general public. (AR 36). Despite finding the opinions of Dr. McGaughey and Dr. King persuasive, ALJ Fellabaum's RFC determination did not adopt their findings that Ms. Vigil is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. *See* (AR 30-45). In fact, ALJ Fellabaum's decision entirely omitted any discussion of their opinions that Ms. Vigil suffers from a moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors, even to explain why she rejected the limitation. *See* (AR 30-45).

ALJ Fellabaum was not required to adopt these findings, given the new rules, but, contrary to the Commissioner's assertion, she remained obligated to consider all relevant evidence in the case record in reaching her disability determination. *Silva*, 2020 WL 4220862, at *4 (citing 20 C.F.R. §§ 404.1520b, 416.920b). The ability to, on a sustained basis, respond appropriately to supervision—specifically, to "accept instructions and respond appropriately to criticism from supervisors"—is relevant here,

13

as it is one of the basic mental abilities needed for any job. 20 C.F.R. § 404.1545(c); *Program Operations Manual System* ("POMS") § DI 25020.010.B.2.c. A "substantial loss of ability" in this area may "severely limit[] the potential occupation base" and would thus "justify a finding of inability to perform other work even for persons with favorable age, education and work experience." POMS § DI 25020.010.A.3.b; *see* 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities, such as . . . responding appropriately to supervision, . . . may reduce [the claimant's] ability to do past work and other work.").

Because the ability to accept instructions and respond appropriately to criticism is critical to the performance of any work, the state agency consultants' conclusions regarding Ms. Vigil's ability to interact with supervisors may have impacted ALJ Fellabaum's calculation of her mental RFC. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (explaining that "a moderate impairment is not the same as no impairment at all" and holding that there was reversible error where the ALJ rejected, without explanation or evidentiary support, certain "moderate impairments" found by a medical consultant but adopted other "moderate" restrictions found by the same consultant); *see also Gonzales v. Saul*, 1:19-cv-1038 KK, 2020 WL 4500596, at *3 (D.N.M. Aug. 5, 2020) (reversing where state agency consultants assessed a moderate limitation interacting with supervisors, but also indicated adequate ability to interact with supervisors in their narrative explanations).

As such, the state agency consultants' conclusions regarding Ms. Vigil's ability to interact with supervisors was significant, probative evidence that ALJ Fellabaum was required to discuss in order for substantial evidence to support her findings. POMS § DI

14

25020.010.B.2.c; *Clifton*, 79 at 1009 ("in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2006) (requiring ALJs to give good reasons for their findings—reasons that are sufficiently specific to allow for meaningful review).

ALJ Fellabaum's failure to discuss Dr. McGaughey and Dr. King's opinions on Ms. Vigil's limited ability to interact appropriately with supervisors leaves the Court with no guidance to perform a meaningful review of ALJ Fellabaum's analysis of Ms. Vigil's mental limitations in the context of her RFC. Therefore, the ALJ Fellabaum's failure to discuss the state agency consultants' conclusions regarding Ms. Vigil's limitations on interacting with supervisors, even merely to explain why she found them unpersuasive, constitutes harmful and reversible error. *Ledford v. Barnhart*, No. 05-7111, 197 Fed. Appx. 808, 811 (10th Cir. Oct. 19, 2006) (unpublished) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (internal citations omitted). The Court thus finds that remand is appropriate. Because the Court finds this reason alone constitutes harmful error mandating remand, the Court will not address the parties' other arguments.

**V.     Conclusion**

For the foregoing reasons, the Court finds the ALJ committed harmful legal error when she failed to incorporate Ms. Vigil's limitations on interacting with supervisors, or explain why she rejected those limitations. Because the Court finds this is a harmful error, the Court will not address the parties' remaining arguments.

**IT IS THEREFORE ORDERED** that Ms. Vigil's *Motion to Reverse and/or Remand*, (Doc. 24), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE